Filed 8/20/15  In re M.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D067766 |
| Plaintiff and Respondent, | (Super. Ct. No. J225507) |
| v. | |
| M.S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Roderick Shelton, Judge.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

M.S. (Minor) was adjudged a ward of the juvenile court after admitting that she committed battery with infliction of serious bodily injury. For the next several years, she underwent numerous rehabilitative placements, performed unsuccessfully on probation, and was eventually confined in a custodial unit for 10 months. Several months after her release from custody, the court terminated wardship jurisdiction and released her from probation.

On appeal, Minor asserts her case is governed by the provision in Welfare and Institutions Code section 786 that mandates dismissal of a wardship petition and sealing of the juvenile record upon *satisfactory* completion of probation.[1] The record shows the trial court declined to find that her completion of probation was "successful" and instead entered its ruling "without comment." Because the trial court refrained from finding a satisfactory completion of probation, section 786's dismissal/record-sealing provision was not triggered. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2009, Minor (then age 13) was involved in an altercation during which she grabbed the victim by the hair and pulled her to the ground, causing the victim to momentarily lose consciousness and injuring the victim's shoulder, knee, and arm, including a possible fracture to her arm. In March 2010, the People filed a juvenile wardship petition alleging Minor had committed battery with infliction of serious bodily injury (Pen. Code, § 243, subd. (d)) and other offenses. Minor (age 14) admitted the

---

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

battery count, the remaining allegations were dismissed, and she was declared a ward of the court. The probation department assessed that Minor was defiant at school and habitually truant; she was using alcohol or drugs; and she was "an angry youth who requires additional structure, anger management, positive decision making, substance abuse services and consistent academic programming."

On June 17, 2010, Minor ran away from home, and on June 18 she failed to appear for her disposition hearing. She was located at a trolley station on June 25 and placed in juvenile hall. Minor admitted she was using drugs and alcohol, and at a July 14, 2010 disposition hearing, the court adjudged her a ward of the court and placed her under the supervision of the probation department.

For the next three and one-half years, Minor engaged in an ongoing pattern of running away from her numerous placements and using drugs and alcohol. From July 2010 to December 2013, she was repeatedly assessed by the Breaking Cycles program, which placed her in a variety of programs and facilities, including the Short Term Offender Program (STOP), the Youth Day Center (YDC), the Reflections Day Center Program, and the Girls Rehabilitation Facility. After completing her first STOP program, in September 2010 she ran away from home and was truant from YDC. She admitted she had violated probation and was using drugs, and was again placed in STOP followed by YDC. In November 2010, she was frequently truant from YDC, and she tested positive for drugs, including cocaine. In December 2010, she enrolled in, but failed to attend, drug treatment classes; she ran away from home; and she was found by the police when she was admitted to a hospital for excessive alcohol consumption. She admitted she had

3

violated probation and was sent to the Girls Rehabilitation Facility until April 2011. With court approval, her mother made plans to relocate with her to another state under the Interstate Compact for Juveniles, but on May 5, 2011 (two days before their scheduled flight), she ran away from home. The police found her on May 14 and took her to juvenile hall, and her mother cancelled the relocation plans. Minor admitted to violating probation, and was again placed at the Girls Rehabilitation Facility until August 2011.

She started the Reflections Day Center Program in September 2011; on December 5, 2011 she left the center without permission; and her whereabouts were unknown until December 30, 2011, when she was admitted to a hospital and the police summoned. Minor tested positive for methamphetamine, and she now had a tattoo saying "Fuck the Police." She admitted she had violated probation, and in January 2012 she was once again confined at the Girls Rehabilitation Facility, with a recommendation by the court that she serve 120 days of actual custody before release. In June 2012, she completed her program at the Girls Rehabilitation Facility and resumed participation in the Reflections Day Center Program.

Minor was truant from the Reflections Day Center starting on July 23, 2012; her whereabouts were unknown until she returned on July 25; during this period she pawned some of her mother's property; she admitted she had a methamphetamine problem; and she tested positive for methamphetamine. She was taken to juvenile hall; a psychological evaluation was conducted; and the psychologist recommended psychotherapy and placement in a substance abuse program. At an August 2012 hearing, Minor (now almost

4

17 years old) admitted she violated parole, and the court ordered that she be placed in a residential treatment facility. When selecting placement in the residential treatment facility, the court noted Minor had been repeatedly committed to the Girls Rehabilitation Facility and this was "not working," and the court warned Minor that if she did not change she could be confined in jail when she turned 18.

In September 2012, Minor commenced her residential treatment at a facility in Orange County. In November 2012, now age 17, she ran away from the facility and her whereabouts were unknown. Minor was found in January 2013, and detained at juvenile hall. She admitted the probation violation, and the court ordered that she remain in juvenile hall until another placement was found for her in a residential treatment facility. The court warned her that if she ran away again she would be confined in the Youthful Offender Unit.

In April 2013, Minor was placed in a group home in San Jose, and in June 2013, she earned her high school diploma. However, on June 5, 2013, she ran away from the group home and her whereabouts were unknown. The group home reported she received weekly individual counseling and attended alcohol groups, but she accumulated "15 incident reports" and had a "hard time adjusting to the program." After running away, she voluntarily went to her parents' home, appeared at a hearing in July 2013, and was detained at juvenile hall pending further proceedings. In September 2013, the court ordered that Minor be placed in the Youthful Offender Unit, but—noting that Minor had turned herself in after absconding—stayed imposition of this placement and released Minor to her mother on home supervision.

In November 2013, Minor (now age 18) absconded from her parents' home. Her whereabouts were unknown until December 12, 2013, when she contacted her parents and turned herself in to probation. Minor admitted she had used alcohol and methamphetamine and violated probation. In December 2013, the court lifted the stay on her Youthful Offender Unit confinement, and she was ordered confined for a maximum of 480 days.

Minor was confined in the Youthful Offender Unit for about 10 months. While confined, she participated in various rehabilitative and counseling programs including for substance abuse; she was involved in one fight and was disciplined for possession of contraband and not following instructions; her overall behavior was average; and she started tattoo removal. She was released from custody in October 2014.

In December 2014, the probation department reported that after her release into the community, Minor (now age 19) had enrolled in a nursing training program and was scheduled to start in January 2015. However, in November 2014 she tested positive for alcohol, and she admitted she had used alcohol on another occasion. Her parents reported she was abiding by her court-ordered curfew and had "good behavior" except for the alcohol consumption. At a December 2014 hearing, the court ordered that she remain a ward of the court under the probation department's supervision, but told her that if she continued to make progress with no further "slip up," probation would be terminated in two months.

In March 2015, the probation department reported that Minor had started the nursing program, tested negative for alcohol and drugs, was attending AA/NA meetings,

6

and paid her court-ordered fines in full.  Minor's counselor reported that Minor had a "positive attitude" and appeared to be committed to completing the nursing program.  The probation department recommended that juvenile jurisdiction be terminated, stating Minor had been out of custody for about five months; her wardship offense had occurred about six years earlier; she had continued to obey all her probation conditions; her attitude and behavior had "come a long way" while in the Youthful Offender Unit; she was undergoing removal of her tattoo; and "it is evident she believes she has a successful future ahead. . . .  [Minor] has the tools and ability to remain law abiding."

*Court's Order Terminating Jurisdiction and Probation "Without Comment"*

At a hearing on March 12, 2015, Minor's counsel requested that the court terminate jurisdiction and deem probation "successful" because, even though she had "some difficulties" during probation, she had now shown herself to be rehabilitated.  The People's counsel stated the People had no objection to termination of jurisdiction, but requested that the court's order be "without comment" given the fact that Minor had "a number of probation violations" and had ended up in a commitment to the Youthful Offender Unit.

The court congratulated Minor on doing an "excellent job" and ruled to terminate "juvenile probation."  However, the court stated:  *"I'm going to terminate without comment, which just means that you can have your record sealed.  I'm just not going to do it today.  So I think when you show progress in what you are doing*, I'm quite confident that if you come back with no new violations, you finish the nursing program,

7

you'll be successful in whatever you want to do, *there's a good chance it will be sealed. I just can't guarantee it at this time*."  (Italics added.)

DISCUSSION

Section 786 provides:  "If the minor *satisfactorily completes . . .* (c) *a term of probation . . . , the court shall order the petition dismissed . . . .  The court shall order sealed all records* pertaining to that dismissed petition  . . . ."[2]  (Italics added.)

Minor argues that section 786 mandates the dismissal of the wardship petition and the sealing of her juvenile record because the trial court found that she satisfactorily completed probation.

To the contrary, the record shows the trial court refrained from finding that she satisfactorily completed probation.  At the March 2015 hearing where the court was deciding whether to terminate wardship jurisdiction and release Minor from probation, defense counsel asked the court to deem the probation "successful."  In response, the People requested that the court terminate jurisdiction "without comment" given Minor's history of noncompliance with her probation terms.  The court then stated it was

---

[2]     Section 786 states:  "*If the minor satisfactorily completes* (a) an informal program of supervision pursuant to Section 654.2, (b) probation under Section 725, or (c) *a term of probation for any offense not listed in subdivision (b) of Section 707*, *the court shall order the petition dismissed*, and the arrest upon which the judgment was deferred shall be deemed not to have occurred. *The court shall order sealed all records* pertaining to that dismissed petition in the custody of the juvenile court, except [for listed exceptions]." (Italics added.)
       There is no dispute that Minor's offense is not an offense listed in section 707, subdivision (b) and her case therefore qualifies for record sealing.

8

terminating jurisdiction "without comment," and explained that this meant it was not sealing Minor's records at this juncture.

Because the court declined to find that Minor had satisfactorily completed probation, the automatic-sealing provision of section 786 was not triggered. As noted by the court, Minor may request sealing of her records at a later date. (See § 781; Cal. Rules of Court, rule 5.830.)

In her reply brief, Minor alternatively argues we should remand the matter to the trial court because it may not have been aware of section 786's sealing provision because the statute became effective on January 1, 2015, which was just a few months before the court's March 12, 2015 ruling terminating jurisdiction and releasing her from probation. She posits the court never explicitly stated that it was declining to find that probation was satisfactorily completed and the case should be remanded for the court to make a ruling on this matter. We are not persuaded.

First, absent an affirmative indication in the record to the contrary, we presume the court is aware of the law. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) Second, the court stated its "without comment" ruling meant the court would not be sealing the record at that time and was not guaranteeing it would be sealed. This statement reflects the court's understanding that if it *had* made a finding of successful probation completion (as requested by defense counsel), this *would* result in a guaranteed sealing of the record, which comports with section 786. We are satisfied the court was aware of section 786 and declined to make the satisfactory-probation-completion finding that would trigger its application.

9

DISPOSITION

The judgment is affirmed.


HALLER, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.